**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BERNARD MIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-7780 |
| | ) | |
| CHICAGO POLICE OFFICERS KENNETH | ) | Honorable Judge Charles R. Norgle, Sr. |
| BOUDREAU, #20435, RICHARD PECK, | ) | |
| ROBERT MONTGOMERY, DANIEL | ) | |
| MCNALLY, #21135, TED PRZEPIORA, | ) | |
| #20151, MICHAEL MCDERMOTT, #20364, | ) | |
| RAYMOND KAMINSKI, #20822, | ) | |
| JEAN ROMIC, #20333, JOHN CLISHAM, | ) | |
| #20600, and THE CITY OF CHICAGO, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER TO**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant City of Chicago, by and through its attorneys James G. Sotos, Jeffrey N.

Given, Sara J. Schroeder, and Lisa M. Meador of The Sotos Law Firm, P.C., hereby answers

Plaintiff's First Amended Complaint, and states:

**Jurisdiction and Venue**

1.      This action is brought under 42 U.S.C. § 1983 to redress the deprivation under

color of law of Plaintiff's rights as secured by the United States Constitution and under Illinois

state law.

**ANSWER:**      The City of Chicago (the "City") admits Counts I, II, III, and IV of this action is
brought pursuant to 42 U.S.C. § 1983 for alleged deprivation under color of law
as secured by the United States Constitution. The City denies the remaining
allegations contained in paragraph 1.

2.     This Court has original jurisdiction of Plaintiff's federal claims pursuant to 28

U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state-law claims pursuant to 28 U.S.C.

§ 1367.

**ANSWER:**     The City admits that jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.     This Court also has original jurisdiction of Plaintiff's state-law claims pursuant to

28 U.S.C. § 1332, as Plaintiff is a citizen of the state of Minnesota, no Defendant is a citizen of

the state of Minnesota, and the amount in controversy exceeds $75,000.00.

**ANSWER:**     Upon information and belief the City admits no Defendant is a citizen of Minnesota, and that the amount in controversy exceeds $75,000.00. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 3.

4.     Venue is proper under 28 U.S.C. § 1391(b) as, on information and belief,

Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's

claims occurred within this judicial district.

**ANSWER:**     Upon information and belief, the City admits venue is proper. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4.

**The Parties**

5.     Plaintiff Bernard Mims ("Plaintiff") is a resident and citizen of the state of

Minnesota.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations found in paragraph 5.

6.     On information and belief, Defendant Kenneth Boudreau ("Defendant Boudreau")

is a citizen of the state of Illinois.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 6.

7.      On information and belief, Defendant Richard Peck ("Defendant Peck") is a citizen of the state of Illinois.

**ANSWER:**      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.      On information and belief, Defendant Robert Montgomery ("Defendant Montgomery") is a citizen of the state of Illinois.

**ANSWER:**      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8.

9.      On information and belief, Defendant Daniel McNally ("Defendant McNally") is a citizen of the state of Illinois.

**ANSWER:**      Upon information and belief, the City admits the allegations contained in paragraph 9.

10.      On information and belief, Defendant Ted Przepiora ("Defendant Przepiora") is a citizen of the state of Illinois.

**ANSWER:**      Upon information and belief, the City admits the allegations contained in paragraph 10.

11.      On information and belief, Defendant Michael McDermott ("Defendant McDermott") is a citizen of the state of Illinois.

**ANSWER:**      Upon information and belief, the City admits the allegations contained in paragraph 11.

12.      On information and belief, Defendant Raymond Kaminski ("Defendant Kaminski") is a citizen of the State of Illinois.

**ANSWER:**      Upon information and belief, the City admits the allegations contained in paragraph 12.

13.      On information and belief, Defendant Jean Romic ("Defendant Romic") is a citizen of the State of Illinois.

**ANSWER:** Upon information and belief, the City admits the allegations contained in paragraph 13.

14. On information and belief, Defendant John Clisham ("Defendant Clisham") is a citizen of the State of Illinois.

**ANSWER:** Upon information and belief, the City admits the allegations contained in paragraph 14.

15. At all relevant times, the individual defendants (collectively "the Defendant Officers") were employed by the City of Chicago as police officers.

**ANSWER:** The City admits the allegations contained in paragraph 15.

16. At all relevant times, the Defendant Officers were acting under color of state law and in the course and scope of their employment with the City of Chicago.

**ANSWER:** Upon information and belief, the City admits the allegations contained in paragraph 16.

17. The Defendant Officers are named in their individual capacity.

**ANSWER:** The City admits the allegations contained in paragraph 17.

18. Defendant City of Chicago is a duly incorporated municipal corporation. Defendant City of Chicago is liable for the wrongful acts and omissions of the Defendant Officers taken in the course and scope of their employment pursuant to the Defendant City of Chicago's statutory obligation to indemnify them.

**ANSWER:** The City admits it is a duly incorporated municipal corporation. The remaining allegations found in paragraph 18 are vague and ambiguous and are an incomplete and/or inaccurate statement of law, and therefore the City denies the remaining allegations.

# Factual Allegations

## *Introduction*

19. The Defendant Officers engineered a case against Plaintiff for a murder they knew he did not commit. They did so for the purpose of protecting confidential informants who were providing them with intelligence related to illegal gang activity. To further their objective the Defendant Officers withheld exculpatory evidence, manipulated witnesses, and misdirected the investigation away from the individuals the Defendant Officers knew to be the likely perpetrators. As a result, Plaintiff was prosecuted for a crime in which he had no involvement.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

## *The Dispute Between the Gangster Disciples and the Black Disciples[1]*

20. In the summer of 2000, the Gangster Disciples and the Black Disciples were involved in an escalating dispute related to drug trafficking. This dispute resulted in multiple shootings and deaths.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21. At that time, Kenneth "Bolo" Jones ("Jones") was a ranking member of the Gangster Disciples. Jones was in charge of drug sales from 47th Street to State Street to Martin Luther King Drive.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22. Jones' "territory" included the Rosenwald Building ("the Rosenwald") located at 54 East 47th Street in Chicago, Illinois.

---

[1] The City makes no answer to Plaintiff's sub-titles. To the extent that the sub-titles are construed as allegations, the City denies the allegations contained therein.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.

23.     The Black Disciples also sought to exert control over the drug trade at the

Rosenwald, which caused conflict between the Black Disciples and the Gangster Disciples.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23.

24.     Multiple shootings and homicides occurred as part of the conflict.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.

25.     Several of the shootings involved Jones.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26.     In June of 2000, Jones and several other Gangster Disciples were involved in a

physical altercation with several Black Disciples.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26.

27.     On or about July 2, 2000, Jones was shot several times.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 27.

28.     On or about August 28, 2000, Jones was again shot several times.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 28.

29.     Jones identified the shooter in at least one of the altercations as Melvin

Richardson ("Richardson"), also known as "Dirty Red."  Richardson was a known member of

the Black Disciples.

**ANSWER:**     Upon information and belief, the City admits Jones identified "Dirty Red" as the shooter in an altercation where Jones was shot. Upon information and belief, the City denies that Jones identified "Dirty Red" as Melvin Richardson. The City

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 29.

30. On information and belief, Richardson was arrested for the shooting, but charges were not approved.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

31. All of the Defendant Officers were aware of the ongoing dispute between the Black Disciples and the Gangster Disciples, that Kenneth Jones was a member of the Gangster Disciples, the shootings of Jones, and the fact that Jones had identified Richardson as the perpetrator in one of the shootings.

**ANSWER:** Upon information and belief, the City denies that Jones identified Melvin Richardson as the perpetrator in one of the shootings. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32. No evidence ever suggested that Plaintiff was involved in any of the prior shootings involving Jones.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.

***Melvin Richardson's and Michael Sardis' Status as Confidential Informants***

33. For years, the Chicago Police Department has used confidential informants as a source of information of criminal gang activity.

**ANSWER:** Upon information and belief, the City admits the allegations contained in paragraph 33.

34. As it relates to gang activity, including homicides, confidential informants are a valuable tool for law enforcement because eyewitnesses are often fearful and/or intimidated into not identifying the perpetrator(s).

**ANSWER:** Upon information and belief, the City admits confidential informants can be a valuable tool for law enforcement. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34.

35. At least as of 2000, Melvin Richardson was a confidential informant used by the Chicago Police Department as a source of intelligence of illegal activity perpetrated by the Black Disciples.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.

36. For several years prior and including 2000, Michael Sardis ("Sardis"), also known as "Mike-Mike," was a member of the Black Disciples.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36.

37. On information and belief, Sardis acted as a confidential informant in multiple homicide investigations throughout the 1990s, and continued to act in that capacity at all times relevant to this Complaint.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

### The Murder of Dwayne Baker

38. Shortly after midnight on October 12, 2000, Kenneth Jones arrived at the Rosenwald.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.

39. Jones entered through the main entrance of the building and proceeded into the building's courtyard.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39.

40.     Dwayne Baker ("Baker"), Edward Ross ("Ross"), and Darrell Garrett ("Garrett") – all correctional officers employed by the Cook County Sheriff's Office – worked part time as security officers at the Rosenwald.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 40.

41.     Baker and Ross were on duty that evening. Garrett – who was not working – went to the building to spend time with Baker and Ross.

**ANSWER:**     Upon information and belief, the City admits the allegations set forth in paragraph 40.

42.     As Jones entered the Rosenwald, he observed Baker, Ross, and Garrett standing by Baker's vehicle in front of the Rosenwald.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42.

43.     Baker and Jones were similar in appearance and stature.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.

44.     A short time after Jones entered the Rosenwald, a gold or tan-colored SUV pulled into the gas station at the corner of East 47th Street and South Michigan, across the street from the Rosenwald.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.

45.     An individual exited the SUV and started firing an assault-type rifle towards the front of the Rosenwald.

**ANSWER:**     Upon information and belief, the City admits that an individual exited the vehicle and fired an assault-type rifle towards the front of the building. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 45.

46.     Baker was struck and killed.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 46.

47.     Another person at the scene – Catrice Davis – suffered a gunshot wound to her calf.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 47.

48.     The perpetrator reentered the SUV and the vehicle fled the scene.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48.

*Initial Investigation*

49.     All of the Defendant Officers participated in the investigation of the shooting.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49.

50.     Defendant Romic was assigned as the lead investigator.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.

51.     Several witnesses were interviewed at the scene.

**ANSWER:**     Upon information and belief, the City admits witnesses were interviewed at the scene of Dwayne Baker's murder.

52.     The witnesses consistently informed police that the SUV from which the shooter emerged was parked at the gas station across 47th Street, and that the SUV was pointed north, facing the front of the Rosenwald.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52.

53.     Darrell Garrett told police that he was about to get into Baker's vehicle when he heard gunshots.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 53.

54.     Garrett went to the front of his truck by the engine block to take cover. Garrett looked over the hood of his vehicle. He told police that he observed the offender firing an assault-type weapon from the hip. The weapon looked like an M16-type rifle and had a banana clip in it.

**ANSWER:**     Upon information and belief, the City admits that Garett told police the allegations contained in paragraph 54.

55.     Garrett told police that the offender was shooting from the driver's side of the SUV.

**ANSWER:**     Upon information and belief, the City admits that Garett told police that the offender was shooting from the driver's side of the vehicle. Upon information and belief, the City denies the remaining allegations contained in paragraph 55.

56.     Garrett observed the offender jump back into the SUV, which then took off westbound on 47th Street.

**ANSWER:**     Upon information and belief, the City admits that Garett told the police that he observed the offender jump into the vehicle, which then took off westbound on 47th Street. Upon information and belief, the City denies the remaining allegations contained in paragraph 56.

57.     Garrett then saw a barrel sticking out of the front window on the passenger side of the SUV.

**ANSWER:**     Upon information and belief, the City admits that Garett told the police that he saw a barrel sticking out of the front window on the passenger side of the vehicle. Upon information and belief, the City denies the remaining allegations contained in paragraph 57.

58.     Joseph Williams ("Williams") was interviewed by police at the scene and gave a detailed description of the events surrounding the shooting.

**ANSWER:**     Upon information and belief, the City admits that Williams was interviewed by police and gave a description of the events surrounding the shooting. The City

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58.

59.     Williams told police that he exited the gas station and was walking north across

47th Street.

**ANSWER:**     Upon information and belief, the City admits that Williams told police that he was coming out of the gas station and was crossing 47th Street northbound. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59.

60.     Williams observed a U-Haul truck parked parallel to 47th Street along the north

side of the gas station lot, across from the gas pumps.

**ANSWER:**     Upon information and belief, the City admits that Williams told police that there was a U-Haul truck parked in the north side of the gas station across from the gas pumps. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 60.

61.     Williams saw the gold-colored SUV drive between the pumps and the U-Haul,

and then park facing north toward the Rosenwald.

**ANSWER:**     Upon information and belief, the City admits that Williams told the police that he saw a Blazer type vehicle pull between the gas pumps and the U-Haul and then stop facing north toward the New Michigan Garden Apartments. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 61.

62.     Williams then witnessed an individual exit the vehicle with a military-type rifle.

The individual began to fire shots towards the Rosenwald.

**ANSWER:**     Upon information and belief, the City admits that Williams told the police the allegations contained in paragraph 62.

63.     Williams told police that he ran to the back of the U-Haul and climbed on the

back of it so that the offender could not shoot at his feet under the truck.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 63.

64. After the shots stopped, Williams observed the SUV drive westbound on 47th

Street.

**ANSWER:** Upon information and belief, the City admits that Williams told the police that when the offender finished shooting the offender got back into the gold 4x4 which then drove westbound on 47th Street. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 64.

65. Williams described the shooter as being male, black, approximately 25-28 years

old, 5'9" – 5'11," medium complexion with a full beard, sideburns, and a mustache.

**ANSWER:** Upon information and belief, the City admits that Williams described the shooter which included the allegations contained in paragraph 65.

66. Ronald Parker ("Parker) was also interviewed at the scene.

**ANSWER:** Upon information and belief, the City admits that Ronald Parker was interviewed by the police. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66.

67. Parker informed police that he saw Kenneth Jones enter the Rosenwald shortly

before the shooting.

**ANSWER:** Upon information and belief, the City admits that Ronald Parker told the police that he saw Bolo enter the 56/60 E. 47th Street building approximately 10 minutes before the shooting occurred. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 67.

68. Based on the circumstances of the shooting, including the fact that Jones and

Baker were similar in appearance, police developed a working theory that members of the Black

Disciples perpetrated the shooting under the mistaken belief that Baker was Jones.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 68.

***The Defendant Officers Ignore Credible Evidence that Melvin Richardson was Involved in the Shooting***

69. On October 13, 2000, Defendant Clisham interviewed Jones.

**ANSWER:** Upon information and belief, the City admits the allegations contained in paragraph 69.

70. Jones informed Defendant Clisham that he had been shot on two prior occasions, and that the perpetrator of at least one of the shootings was Melvin Richardson.

**ANSWER:** Upon information and belief, the City admits that Jones informed Det. Clisham that he was the victim of two aggravated batteries, one of which occurred on August 28, 2000, and Jones identified a man named "Dirty Red" as the shooter. Upon information and belief, the City denies that Jones identified "Dirty Red" as Melvin Richardson. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70.

71. All of the Defendant Officers were aware of the information provided by Jones.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71.

72. Despite the fact that Richardson had shot Jones on at least one prior occasion, the Defendant Officers never interviewed Richardson concerning his possible involvement in the shooting of Baker.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72.

73. On information and belief, the Defendant Officers never showed Garrett, Williams, or any other eyewitness a photo array including Richardson's photograph.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73.

74. The Defendant Officers never pursued Richardson as a suspect because he was an active informant in the Chicago Police Department's continuing investigation of the Black Disciples, and the Defendant Officers did not want to jeopardize a source of intelligence.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74.

***The Defendant Officers Receive Evidence that Taboo McNeal was Involved in the Shooting***

75.     On January 10 and 11, 2001, Defendants Boudreau, Peck, and Montgomery

interviewed Dan Thomas ("Thomas"), a member of the Black Disciples.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 75.

76.     Thomas told Defendants Boudreau, Peck, and Montgomery that in October and

December of 2000, Thomas learned that Taboo McNeal ("McNeal") "killed a policeman at the

Rosenwald building."

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 76.

77.     Thomas further informed them that Donald Gardner, a known high-ranking

member of the Black Disciples, ordered McNeal to run "security" at the Rosenwald.  Running

"security" includes keeping members of the Gangster Disciples out of the area.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 77.

78.     Thomas further informed Defendants Boudreau, Peck, and Montgomery that

McNeal, after shooting the policeman, fled the area in an SUV.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 76.

79.     This information was consistent with the shooting as described by witnesses at the

scene, as well as the police's theory as to the motive for the shooting.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 79.

80.     The information provided by Thomas was known to all of the Defendant Officers.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 80.

***The Defendant Officers Ignore Credible Evidence that Michael Sardis was the Shooter***

81.     On February 20, 2001, Defendant McNally interviewed Melvin Richardson,

pursuant to Richardson's status as an informant.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 81.

82.     Richardson told Defendant McNally that he had a conversation with Michael

Sardis in December of 2000.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 82.

83.     During that conversation, Sardis told Richardson that a few months prior, he,

McNeal, and Dwayne Chester ("Chester") drove in a truck to the Rosenwald to "air those

[expletive] out," which meant to shoot up Gangster Disciples.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 83.

84.     Sardis claimed that Chester filed the actual shots.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 84.

85.     However, on information and belief, Sardis fit the description of the shooter

provided by Joseph Williams.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 85.

86.     Defendants knew Sardis and Chester were Black Disciples.

**ANSWER:**     To the extent the allegations in paragraph 86 are alleged against the City, the City
denies the allegations. The City lacks knowledge or information sufficient to form
a belief as to the truth of the remaining allegations contained in paragraph 86.

87.     Again, this information was consistent with the police's theory that Baker was

shot by Black Disciples because he was mistaken for Jones.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87.

88.     The information provided by Richardson was also consistent with the information provided by Thomas to Defendants concerning McNeal's involvement in the shooting.

**ANSWER:**     To the extent the allegations in paragraph 88 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 88.

89.     The information provided by Richardson was known to all Defendants.

**ANSWER:**     To the extent the allegations in paragraph 89 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 89.

90.     Defendants deemed the information provided by Richardson to be credible, but they did not pursue it.

**ANSWER:**     To the extent the allegations in paragraph 90 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 90.

91.     Defendants never made any attempt to interview Sardis concerning his involvement in the shooting.

**ANSWER:**     To the extent the allegations in paragraph 91 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 91.

92.     On information and belief, the Defendant Officers never showed Garrett, Williams, or any other eyewitness a photo array including Sardis' photograph.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92.

93.     The Defendant Officers never pursued Sardis as a suspect because he was an active informant in the Chicago Police Department's continuing investigation of the Black Disciples, and the Defendant Officers did not want to jeopardize a source of intelligence.

**ANSWER:**   The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93.

### *The Defendant Officers' Motive to Frame Plaintiff*

94.   Rather than pursue credible information that Melvin Richardson, Michael Sardis, Taboo McNeal, and Dwayne Chester perpetrated the shooting, the Defendant Officers devised a scheme to falsely implicate Plaintiff.

**ANSWER:**   The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94.

95.   Prior to June 4, 2001, there was no evidence to suggest that Plaintiff was involved in the Baker homicide.

**ANSWER:**   The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95.

96.   In fact, Plaintiff did not fit the description of the shooter provided by eyewitnesses at the scene.

**ANSWER:**   The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96.

97.   Plaintiff was known to police in the Area, however, based on a prior encounters Plaintiff had with them.

**ANSWER:**   The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97.

98.   In one instance, on July 27, 2000, Plaintiff was confronted at gunpoint by police officers outside of the building located at 4555 South Federal in Chicago, Illinois.

**ANSWER:**   The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98.

99.   At that time, Plaintiff was not committing any crime.  Rather, he was simply sitting outside the building, speaking with friends.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99.

100.     Two of the police officers escorted Plaintiff into the building.  The officers smashed and disabled lights in the hallway, and proceeded to punch, kick, and beat Plaintiff.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100.

101.     Plaintiff cried out for help. However, another officer prevented residents from entering the hallway and intervening.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101.

102.     As a result of the beating, Plaintiff suffered physical injuries including a fractured jaw that required a metal plate to be inserted.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 102.

103.     Plaintiff subsequently filed a lawsuit against several police officers for excessive force which was later resolved by a settlement agreement.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 103.

104.     As a result of these and other encounters, the Defendant Officers disliked Plaintiff and endeavored to find a reason to arrest him.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104.

### The Defendant Officers Obtain an Unreliable, Incredible Identification of Plaintiff from Thomasina McKee

105.     Prior to June 4, 2001, there was no reason to believe that Thomasina McKee ("McKee") had information about the Baker homicide or that she was present at the scene when Baker was killed.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105.

106. On June 4, 2001, Defendants Przepiora and McDermott picked McKee up from her place of work and transported her to Area One.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 106.

107. Before taking her to the Area, Defendants Przepiora and McDermott did not tell McKee why she was being taken to the station.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107.

108. McKee thought that she was being transported to the Area because she believed that she had an open warrant.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 108.

109. During the course of the interview, Defendants Przepiora and McDermott suggested to McKee that Plaintiff committed the shooting, despite having no evidence to support that assertion.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109.

110. During the course of the interview, Defendants Przepiora and McDermott showed McKee a photograph of Plaintiff, who McKee knew as "Bern."

**ANSWER:** Upon information and belief, the City admits that McKee viewed a photo array and identified Bernard Mims aka "Bern" as the shooter with the rifle-style weapon. Upon information and belief, McKee told the police that she knew "Bern". The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 110.

111.     McKee then told Defendants Przepiora and McDermott that at the time of the shooting she was sitting in a parked vehicle on East 47th Street with Erma Jones and a girl she knew as Danielle.

**ANSWER:**     The City admits that McKee told the police that at the time of the shooting she was sitting in a vehicle parked on 47th Street with Erma Jones and Danielle. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 111.

112.     McKee told Defendants Przepiora and McDermott that the vehicle was parked along the north side of the street, facing west.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 112.

113.     McKee further stated that she was parked about thirty feet from the northwest corner of 47th Street and Michigan.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113.

114.     McKee told Defendants Przepiora and McDermott that after hearing shots, she purportedly observed the gold-colored SUV parked in the northwest corner of the gas station lot, next to a pay phone.

**ANSWER:**     Upon information and belief, the City admits that McKee told the police that after hearing gunshots she observed a gold Blazer parked in the gas station. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 114.

115.     According to McKee, she observed the shooter on the rear passenger side of the SUV, armed with a rifle.

**ANSWER:**     Upon information and belief, the City admits that McKee told the police that she observed "Bern" at the rear passenger side of the Blazer armed with and firing a rifle-style weapon.

116.     McKee identified Plaintiff as the shooter.

**ANSWER:** Upon information and belief, the City admits that McKee identified Plaintiff as the shooter of the rifle-style weapon.

117. Defendants Przepiora and McDermott knew that McKee's identification of

Plaintiff as the shooter was unreliable and incredible.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 117.

118. Plaintiff did not fit the description of the shooter provided by Joseph Williams, in

that Plaintiff has a light complexion and was clean-shaven at the time of the shooting.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118.

119. McKee's purported observations of Plaintiff as firing shots from the passenger

side of the vehicle conflicted with what Garrett told police at the scene.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119.

120. Most importantly, Defendants Przepiora and McDermott knew that from where

McKee told them she was positioned, she would not be able to see through the U-Haul and the

SUV to identify the shooter.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120.

121. Because Defendants Przepiora and McDermott did not believe McKee's

identification to be credible, they did not prepare a supplemental report concerning the interview

for more than two-and-a-half years.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 121.

122. Defendants Przepiora and McDermott did not contact felony review or prepare a written statement to memorialize McKee's purported identification of Plaintiff as the alleged shooter.

**ANSWER:**    Upon information and belief, the City denies that Przepiora and McDermott did not memorialize McKee's identification of Plaintiff as the shooter. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 122.

123. For more than two-and-a-half years, the Defendant Officers did not follow up with Garrett or Williams to show them a photo array with Plaintiff's photograph to determine whether they could identify him as the shooter.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123.

124. For more than two-and-a-half years, the Defendant Officers did not interview Erma Jones or Danielle to corroborate McKee's story.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124.

125. Again, they did not do so because they knew it to be false.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 125.

***The Defendant Officers Attempt to Advance their Efforts to Falsely Implicate Plaintiff through Tashundra Crafton***

126. On September 18, 2001, Defendant Przepiora interviewed Tashundra Crafton ("Crafton").

**ANSWER:**    Upon information and belief, the City admits the allegations contained in paragraph 126.

127.    As with McKee, prior to Crafton's interview there was no reason to believe that

Crafton had information about the Baker homicide or that she was present at the scene when

Baker was killed.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 127.

128.    The only explanation for Defendant Przepiora's pursuit of Crafton as a witness is

to use her to fabricate evidence against Plaintiff.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 128.

129.    During the course of the interview, Defendant Przepiora suggested to Crafton that

Plaintiff committed the shooting, again despite having no evidence to support that assertion.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 129.

130.    During the course of the interview, Defendant Przepiora showed Crafton a single

photograph of Plaintiff, who Crafton also knew as "Bern."

**ANSWER:**    Upon information and belief, the City admits that during the course of the
interview Crafton viewed a photo array and identified "Bern" aka Bernard Mims
as the subject armed with the AK-47 type weapon. Upon information and belief,
the City denies the remaining allegations contained in paragraph 130.

131.    Crafton proceeded to tell Defendant Przepiora that she was on a CTA bus headed

eastbound on 47th Street at the time of the shooting.

**ANSWER:**    Upon information and belief, the City admits that Crafton told the police that she
was on a CTA bus traveling eastbound on 47th Street when she heard gunshots.
The City lacks knowledge or information sufficient to form a belief as to the truth
of the remaining allegations contained in paragraph 131.

132.    According to Crafton, she heard shots and observed Plaintiff standing in the

middle of 47th Street, armed with an AK-47 type weapon, firing shots towards the front of the

Rosenwald.

**ANSWER:**     Upon information and belief, the City admits that Crafton told the police that she heard gunshots and observed "Bern" standing in the middle of 47th Street armed with a "chopper" pointed toward the front entrance of the Rosenwald Building. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 132.

133.    Incredibly, Crafton told Defendant Przepiora that the bus continued on through the area of the shooting, and that she observed Plaintiff place the weapon in the front seat of a gold SUV, parked between two U-Haul trucks.

**ANSWER:**     Upon information and belief, the City admits that Crafton told the police that as the bus passed the Rosenwald Building, she saw "Bern" aka Mims place the weapon in the front seat of the gold SUV parked in the gas station between two U-Haul trucks. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 133.

134.    Defendant Przepiora knew Crafton's identification of Plaintiff to be utterly worthless, based on the incredibly(sic) nature of her story, the fact that no other witness observed a CTA bus on 47th Street at the time of the shooting, and because Crafton's description of Plaintiff was inconsistent with Plaintiff's appearance.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 134.

135.    Defendant Przepiora thought so little of the information provided by Crafton that he did not prepare a supplemental report reflecting the interview for more than two years.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 135.

136.    Defendant Przepiora did not endeavor to verify Crafton's claim that a CTA bus was on 47th Street at the time of the shooting by, for example, contacting any of the drivers along that route.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 136.

137.    Defendant Przepiora did not do so because he knew Crafton's story to be false.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 137.

***The Defendant Officers Fabricate Evidence to Support a Case Against Plaintiff***

138. By November 12, 2003, the Defendant Officers were no closer to solving the Baker homicide.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 138.

139. The Defendant Officers knew that Taboo McNeal was involved in the shooting. However, they did not want to compromise their informants, Melvin Richardson and Michael Sardin, by arresting McNeal without some other source of evidence as to McNeal's involvement.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 139.

140. The Defendant Officers therefore devised a scheme to charge Plaintiff with the shooting, intending to pressure him into flipping on McNeal.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 140.

141. On November 12, 2003, Defendants Przepiora and Kaminski re-interviewed McKee and obtained the same incredible, unreliable identification of Plaintiff as they had in June of 2001.

**ANSWER:** Upon information and belief, McKee was re-interviewed on November 12, 2003, and provided the same facts as reported in her prior interview. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 141.

***The Defendant Officers Fabricate Wallace Fields' Identification of Plaintiff as the Shooter***

142. Wallace Fields ("Fields") was interviewed at the scene shortly after Baker was shot.

**ANSWER:**     Upon information and belief, the City admits that Wallace Fields was interviewed by the police after Baker was shot. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 142.

143.     When Fields was first interviewed, he informed police that he was standing on

47th Street at the time of the shooting, and that he was able to observe the shooter.

**ANSWER:**     Upon information and belief, the City admits Fields told the police that he was present on 47th Street outside of the Rosenwald Building when Baker was shot and provided information regarding the shooter. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 143.

144.     Per Fields, the shooter walked all the way across 47th Street up to Baker, and shot

Baker while he was lying on the ground.

**ANSWER:**     Upon information and belief, Fields told the police that the shooter exited the vehicle parked in the gas station, fired numerous times at Baker, walked up to Baker and fired at him as he lay on the ground. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 144.

145.     No other witness observed the shooter approach Baker as Fields originally told

police.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 145.

146.     Fields claimed that he would be able to identify the shooter because he had seen

him before, although he did not know the shooter's name or nickname.

**ANSWER:**     Upon information and belief, the City admits that Fields told police the allegations contained in paragraph 146.

147.     On March 22, 2004, Defendants Przepiora and Kaminski re-interviewed Fields.

**ANSWER:**     Upon information and belief, the City admits that on March 22, 2004 Fields was interviewed by Detectives Przepiora and Kaminski. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 147.

148.	At that time Defendants Przepiora and Kaminski knew that Fields was an unreliable witness based on the fact that what he claimed to observed was contradicted by every other eyewitness at the scene.

**ANSWER:**	The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 148.

149.	Defendants Przepiora and Kaminski told Fields that McKee and Crafton had identified Plaintiff as the shooter.

**ANSWER:**	The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 149.

150.	Defendants Przepiora and Kaminski showed Fields the same photograph of Plaintiff that they had previously shown McKee.

**ANSWER:**	The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 150.

151.	Fields told Przepiora and Kaminski that he had never seen Plaintiff before.

**ANSWER:**	 The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 151.

152.	Defendants Przepiora and Kaminski coerced Fields sign the back of Plaintiff's photograph, next to McKee's signature.

**ANSWER:**	The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 152.

153.	Defendants Przepiora and Kaminski knew that Fields' putative identification of Plaintiff was false.

**ANSWER:**	The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 153.

154.	Defendants engineered the false identification of Plaintiff to bolster what they otherwise knew to be an incredible identification of Plaintiff made by Thomasina McKee.

**ANSWER:** To the extent the allegations in paragraph 154 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 154.

*The Defendant Officers Fabricate a Prior Identification of Plaintiff by Thomasina McKee*

155. On June 25, 2004, Defendant Przepiora re-interviewed Kenneth Jones.

**ANSWER:** Upon information and belief, Detective Przepiora interviewed Kenneth Jones on June 25, 2004. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 155.

156. In order to bolster McKee's incredible identification of Plaintiff, Defendant Przepiora coerced Jones into fabricating a story that McKee had told Jones shortly after the shooting that she witnessed the shooting and that Plaintiff was the shooter.

**ANSWER:** Upon information and belief, Jones told police that "Sena" told him 2 days after the shooting that she witnessed the shooting and identified "Bern" aka "Little B" as the shooter. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 156.

157. Defendant Przepiora knew this claim to be completely false. McKee never told Jones that Plaintiff was the shooter. The conversation concocted by Defendant Przepiora never occurred.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 157.

*The Defendant Officers Initiate Charges Against Plaintiff Without Probable Cause*

158. On July 7, 2004, Defendants Przepiora and Kaminski caused Plaintiff to be arrested.

**ANSWER:** Upon information and belief, the City admits that on July 6, 2004 an arrest warrant was issued for Plaintiff he was subsequently arrested on July 7, 2004. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 158.

159. Defendants Przepiora, Kaminski, and Boudreau questioned Plaintiff.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 158.

160.     Defendants Przepiora, Kaminski, and Boudreau told Plaintiff that they knew he
did not commit the shooting, but claimed that he knew who had.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 160.

161.     Defendants Przepiora, Kaminski, and Boudreau showed Plaintiff several
photographs, including a photograph of Taboo McNeal.

**ANSWER:**     Upon information and belief, detectives confronted Plaintiff with photographs of
Black Disciple gang members. The City lacks knowledge or information
sufficient to form a belief as to the truth of the remaining allegations contained in
paragraph 161.

162.     Defendants Przepiora, Kaminski, and Boudreau threatened Plaintiff that if he did
not give them information that McNeal was involved in the shooting, that he would spend the
rest of his life in prison.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 162.

163.     Plaintiff told Defendants Przepiora, Kaminski, and Boudreau that he did not have
any involvement in the shooting, and that he did not have any information about the perpetrators.

**ANSWER:**     Upon information and belief, Plaintiff denied any involvement in the murder of
Baker. The City lacks knowledge or information sufficient to form a belief as to
the truth of the remaining allegations contained in paragraph 163.

164.     Because Plaintiff could not give them any information, Defendants Przepiora,
Kaminski, and Boudreau requested that assistant state's attorney Charles Brinkman approve
charges against Plaintiff.

**ANSWER:**     Upon information and belief, the City admits that the police contacted Felony
Review and ASA Brinkman approved First Degree Murder charges against
Plaintiff. The City lacks knowledge or information sufficient to form a belief as to
the truth of the remaining allegations contained in paragraph 164.

165.     In doing so, Defendants Przepiora, Kaminski, and Boudreau misled the assistant state's attorney by (1) withholding from him Michael Sardis' admission that he, Taboo McNeal, and Dwayne Chester committed the shooting; (2) withholding from him that McKee could not have seen the shooter from her vantage point on 47th Street; (3) withholding from him the fact that the Defendant Officers suggested to McKee that Plaintiff was the shooter prior to her identification of him; (4) withholding from him the fact that Field's putative identification of Plaintiff was fabricated; and (5) withholding from him the fact that Jones' statements concerning McKee's identification of Plaintiff as the shooter shortly after the shooting were fabricated.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 165.

166.     The assistant state's attorney approved first-degree and attempt murder charges against Plaintiff based on the fabricated evidence.

**ANSWER:**     Upon information and belief, the City admits that the assistant state's attorney approved first degree and attempted murder charges against Plaintiff. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 166.

167.     On the way into lockup, Defendant Przepiora "muffed" Plaintiff in the back of the head and told him something to the effect of, "You may just beat it, but you will spend forever in jail before you do."

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 167.

### Plaintiff's Trial, Conviction, and Subsequent Exoneration

168.     The Defendant Officers never disclosed to the prosecution or to the defense the status of Michael Sardis as an informant, or their true motivations for arresting Plaintiff for a crime they knew he did not commit.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 168.

169. The Defendant Officers never disclosed to the prosecution or to the defense the manner in which they fabricated evidence against Plaintiff.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 169.

170. On May 16, 2006, Plaintiff was convicted of first-degree murder and attempt murder based on the evidence fabricated by the Defendant Officers.

**ANSWER:** Upon information and belief, the City admits that Plaintiff was found guilty of first degree murder and attempted murder. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 170.

171. Defendant was subsequently sentenced to a total of 95 years in the Illinois Department of Corrections.

**ANSWER:** Upon information and belief, the City admits the allegations contained in paragraph 171.

172. In 2015, the Cook County State's Attorney's Office ("the CCSAO") initiated a re-investigation of Plaintiff's conviction, based in part on the failure of law enforcement to adequately investigate the involvement of Taboo McNeal, Michael Sardis, and Dwayne Chester in the shooting.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 172.

173. On October 27, 2016, on the motion of the State, Plaintiff's conviction and sentence were vacated and the charges dismissed.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 173.

174. Plaintiff subsequently filed a petition for a certificate of innocence. The State did not oppose the petition. On November 10, 2016, the circuit court granted Plaintiff's petition, and he was awarded a certificate of innocence.

**ANSWER:**   The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 174.

### *Plaintiff's Damages*

175. As a direct and proximate result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Plaintiff was incarcerated 4,860 days for a crime he did not commit.

**ANSWER:**   To the extent the allegations in paragraph 175 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 175.

176. As a further direct and proximate result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Plaintiff endured incalculable pain and suffering, severe mental anguish, emotional distress, humiliation, indignities and embarrassment, degradation, permanent loss of natural psychological development, and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and freedom of speech and expression.

**ANSWER:**   To the extent the allegations in paragraph 176 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 176.

177. As a further direct and proximate result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Plaintiff endured the

sub-standard medical care attendant the practical limitations of incarceration, and which is

rampant within the Illinois Department of Corrections.

**ANSWER:** To the extent the allegations in paragraph 177 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 177.

178. In particular, beginning in about July of 2015, Plaintiff began to suffer extreme

pain in his jaw associated with a plate that had been inserted to stabilize a left mandibular

fracture.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 178.

179. Plaintiff went months without any treatment and without seeing an off-site

specialist.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 179.

180. Plaintiff lost an extreme amount of weight.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 180.

181. Plaintiff's pain was so bad that he began to hallucinate.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 181.

182. Plaintiff contemplated suicide and was placed on suicide watch.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 182.

183. It was not until May of 2016, almost 10 months after Plaintiff first experiencing

pain, that he was shipped to see an oral surgeon. However, that oral surgeon lacked the

equipment and expertise necessary to address the pain caused by the plate in Plaintiff's jaw.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 183.

184.     Plaintiff continued to suffer extreme pain, swelling, and muscle tightness in his jaw.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 184.

185.     Plaintiff was placed on a liquid diet.  At times he was given over-the-counter, largely ineffective pain medication, and at other times he was simply ignored.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 185.

186.     It was not until October 26, 2016, the day before his release, that Plaintiff finally underwent surgery at UIC Medical Center.  The plate was removed and Plaintiff's pain was finally alleviated.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 186.

187.     The foregoing is just one of countless examples of the horrors to which Plaintiff was subjected as a result of Defendants' unconstitutional misconduct.

**ANSWER:**     To the extent the allegations in paragraph 187 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 187.

### Causes of Action

### COUNT I
### 42 U.S.C. § 1983 – 14th Amendment Due Process
### Destruction and/or Concealment of Material Evidence

188.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     The City adopts and restates its answers and responses to paragraphs 1 through 187 of this Complaint as if fully stated in response to paragraph 188.

189. In the manner described above and alleged herein, the Defendant Officers concealed and/or destroyed material exculpatory and impeachment evidence from Plaintiff and from prosecutors before, during, and after Plaintiff's criminal trial, causing the prosecution against Plaintiff to commence and continue for more than 13 years.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 189.

190. In concealing and/or destroying the material exculpatory and impeachment evidence, the Defendant Officers acted maliciously, intentionally, and with willful and wanton disregard for Plaintiff's constitutional rights.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 190.

191. The Defendant Officers' actions directly and proximately caused the injuries and damages to Plaintiff as claimed above, and constitute a due process violation under the 14th Amendment of the United States Constitution.

**ANSWER:** To the extent the allegations in paragraph 191 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 191.

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff, costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

**COUNT II**
**42 U.S.C. § 1983 – 14th Amendment Due Process**
**Fabrication of Evidence**

192. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** The City adopts and restates its answers and responses to paragraphs 1 through 191 of this Complaint as if fully stated in response to paragraph 192.

193.     In the manner described above and alleged herein, the Defendant Officers fabricated and solicited false evidence, including witness identifications, witness statements and stories, police reports, and physical evidence they knew to be false.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 193.

194.     As a result of knowingly fabricating and soliciting false evidence, Defendant Officers knew or should have known that Plaintiff was innocent.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 194.

195.     The Defendant Officers continued their investigation of Plaintiff despite knowing or having should have known Plaintiff was clearly innocent.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 195.

196.     The Defendant Officers further used investigative techniques that were so improper that they knew or should known that those techniques would yield false information.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 196.

197.     The evidence fabricated by Defendant Officers was used at trial to secure Plaintiff's unjust and wrongful conviction.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 197.

198.     The Defendant Officers' misconduct directly resulted in the criminal conviction of Plaintiff, thereby denying his constitutional due process rights guaranteed by the 5th and 14th Amendments.  Absent this misconduct the prosecution of Plaintiff could not have and would not have been pursued, much less resulted in a conviction.

**ANSWER:** To the extent the allegations in paragraph 198 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 198.

199. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with a willful indifference to Plaintiff's constitutional rights.

**ANSWER:** To the extent the allegations in paragraph 199 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 199.

200. The Defendant Officers' actions directly and proximately caused the injuries and damages to Plaintiff as claimed above, and constitute due process violations under the 14th Amendment of the United States Constitution.

**ANSWER:** To the extent the allegations in paragraph 200 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 200.

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff, costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT III
### 42 U.S.C. § 1983 – 14th Amendment Due Process
### Failure to Intervene

201. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** The City adopts and restates its answers and responses to paragraphs 1 through 200 of this Complaint as if fully stated in response to paragraph 201.

202. In the manner described above and alleged herein, during the constitutional violations described above, the Defendant Officers stood by without intervening to prevent the misconduct, including but not limited to, the concealment and/or destruction of material

exculpatory and impeachment evidence, and the deliberate fabrication of false evidence that

caused Plaintiff's charges and conviction.

**ANSWER:** To the extent the allegations in paragraph 202 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 202.

203. The Defendant Officers had a reasonable opportunity to prevent this harm, but

failed to do so.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 203.

204. As a result of the Defendant Officers' failure to intervene to prevent the violation

of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional

distress.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 204.

205. The misconduct described in this Count was objectively unreasonable and was

undertaken with malice and willful indifference to Plaintiff's constitutional rights.

**ANSWER:** To the extent the allegations in paragraph 205 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 205.

206. Defendant Officers' actions directly and proximately caused the injuries and

damages to Plaintiff as claimed above, and constitute due process violations under the 14th

Amendment of the United States Constitution.

**ANSWER:** To the extent the allegations in paragraph 206 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 206.

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff, costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT IV
### 42 U.S.C. § 1983 – 14th Amendment Due Process
### Conspiracy to Deprive Constitutional Rights

207.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    The City adopts and restates its answers and responses to paragraphs 1 through 206 of this Complaint as if fully stated in response to paragraph 207.

208.    In the manner described above and alleged herein, the Defendant Officers together reached an understanding, engaged in a course of conduct, engaged in a joint action, and otherwise conspired among and between themselves to deprive Plaintiff of exculpatory and impeachment information to which he was lawfully entitled and which would have led to either his not being charged, his acquittal, or his more timely exoneration.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 208.

209.    In the manner described above and alleged herein, the Defendant Officers together reached an understanding, engaged in a course of conduct, engaged in a joint action, and otherwise conspired among and between themselves to deliberately fabricate false evidence against Plaintiff when they knew or should have known he was innocent, resulting in violations of Plaintiff's due process rights.

**ANSWER:**    To the extent the allegations in paragraph 209 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 209.

210.    The Defendant Officers, acting in concert among and between themselves and with unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:**     To the extent the allegations in paragraph 210 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 210.

211.     In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to arresting Plaintiff without probable cause, fabricating and improperly suggesting identification evidence, withholding material exculpatory and impeachment evidence, and committing perjury during hearings and trials.

**ANSWER:**     To the extent the allegations in paragraph 211 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 211.

212.     The misconduct described in this count was undertaken with malice, willfulness, and/or reckless indifference to Plaintiff's constitutional rights.

**ANSWER:**     To the extent the allegations in paragraph 212 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 212.

213.     Said conspiracy and overt acts were continued from on or about January 1, 2001 through the date of Plaintiff's conviction and sentence.

**ANSWER:**     To the extent the allegations in paragraph 213 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 213.

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff, costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

### COUNT V
### Illinois State Law
### Malicious Prosecution

214.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** The City adopts and restates its answers and responses to paragraphs 1 through 213 of this Complaint as if fully stated in response to paragraph 214.

215. In the manner described above and alleged herein, the Defendant Officers knowingly and maliciously initiated and/or caused judicial proceedings to continue against Plaintiff knowing they lacked probable cause to do so.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 215.

216. Defendants created false or incomplete police reports and/or made false and/or incomplete statements to other police officers, the prosecutors, and in court regarding the criminal investigation in this matter.

**ANSWER:** To the extent the allegations in paragraph 216 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 216.

217. Defendants instituted the judicial proceedings and/or caused them to continue against Plaintiff with malice, and with willful and wanton disregard for the truth of the allegations asserted against Plaintiff.

**ANSWER:** To the extent the allegations in paragraph 217 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 217.

218. This prosecution was terminated in Plaintiff's favor on October 27, 2016, when his convictions and sentence were vacated and all charges were dropped. That the termination of proceedings is indicative of innocence is demonstrated by the certificate of innocence issued to Plaintiff on November 10, 2016.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 218.

219. Defendants are liable for the prosecution because it was proximately caused by their unlawful actions as set forth above.

**ANSWER:**     To the extent the allegations in paragraph 211 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 219.

219.     These actions directly and proximately caused the injuries and damages to

Plaintiff as claimed above and constitute the tort of malicious prosecution under Illinois law.

**ANSWER:**     To the extent the allegations in paragraph 220 are alleged against the City, the City denies the allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 220.

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff,

costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT VI
## Illinois State Law
## Indemnification

221.     Defendant City of Chicago was the employer of each of the Defendant Police

Officers at all times relevant to this complaint, as set forth above.

**ANSWER:**     The City admits the allegations contained in paragraph 221.

222.     All of the individually named Defendant Officers were at all relevant times acting

within the course and scope of their employment.

**ANSWER:**     Upon information and belief, the City admits the allegations contained in paragraph 222.

223.     Pursuant to 745 ILCS 10/9-102, the governmental entity set forth above is liable

to pay all judgments and settlements entered against each of its employees for the claims set

forth above.

**ANSWER:**     The allegations found in paragraph 223 are vague and ambiguous and are an incomplete and/or inaccurate statement of law, and therefore the City denies the allegations.

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff, costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT VII
## Illinois State Law
### *Respondeat Superior*

224.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    The City adopts and restates its answers and responses to paragraphs 1 through 223 of this Complaint as if fully stated in response to paragraph 2224.

225.    At all times relevant to this complaint the Defendant Officers acted as agents of, and in the scope of their employment with, Defendant City of Chicago.

**ANSWER:**    Upon information and belief, the City admits the allegations contained in paragraph 225.

226.    Defendant City of Chicago is liable for the torts of the Defendant Officers for their violations of state law under the doctrine of *respondeat superior.*

**ANSWER:**    The allegations found in paragraph 226 are vague and ambiguous and are an incomplete and/or inaccurate statement of law, and therefore the City denies the allegations.

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff, costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

## JURY DEMAND

Defendant City of Chicago hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

## AFFIRMATIVE DEFENSES

Defendant City of Chicago, by and through its attorneys, The Sotos Law Firm, P.C., asserts the following affirmative defenses to Plaintiff's First Amended Complaint:

1.      The City is not liable to Plaintiff if its employees or agents are not liable to the Plaintiff. 745 ILCS 10/2-109.

2.      Pursuant to 42 U.S.C. §1983, a municipality is not liable under a theory of *respondeat superior* for the constitutional violations of its employees. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).

3.      Plaintiff has a duty to mitigate his damages, and any damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

4.      To the extent any injuries or damages claimed by Plaintiff was proximately caused, in whole or in part, by any wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff on any of his claims brought under Illinois law and based on any finding of "reckless" willful and wanton behavior, as opposed to "intentional" willful and wanton behavior, must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this case. *See, Poole of City of Rolling Meadows*, 167 Ill.2d 41, 656 N.E.2d 768, 212 Ill. Dec. 171 (1995).

5.      The City is not liable under Section 1983 if Plaintiff does not prove any violation of his constitutional rights. *See, City of Los Angeles v. Heller*, 475 U.S. 796, 79 (1986).

6.      The City is immune from the imposition of punitive damages under both state and federal law.  Punitive damages cannot be imposed against a municipality in an § 1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive or exemplary damages, nor may it pay a judgment for punitive damages on behalf of an employee. 745 ILCS 10/2-102.

7.     To the extent Plaintiff presented or could have presented any of these claims in his criminal proceedings and they were either fully litigated or could have been litigated, Plaintiff's claims are barred by the doctrine of collateral estoppel.

8.     Plaintiff's claims are barred by the applicable statutes of limitations and the Illinois Tort Immunity Act, 745 ILCS 8-101 (a) and (c).

WHEREFORE, Defendant City requests judgment in its favor and against the Plaintiff, costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

Dated: March 13, 2018                    Respectfully submitted,

                                         /s/ Lisa M. Meador
                                         LISA M. MEADOR, Attorney No. 6270259
                                         *One of the Attorneys for Defendant City of Chicago*

James G. Sotos
Jeffrey N. Given
Lisa M. Meador
Sara J. Schroeder
THE SOTOS LAW FIRM, P.C.
550 E. Devon Ave., Suite 150
Itasca, IL 60143
(630) 735-3300
lmeador@jsotoslaw.com

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on March 13, 2018, I electronically filed the foregoing **Defendant City of Chicago's Answer to Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

***Attorneys for Plaintiff:***
Kathleen T. Zellner
Douglas H. Johnson
Nicholas M. Curran
Kathleen T. Zellner & Associates, P.C.
Esplanade IV
1901 Butterfield Road, Suite 650
Downers Grove, IL 60515
T: (630) 955-1212
F: (630) 955-1111
kathleen.zellner@gmail.com
dhjohnson43@aol.com
nmcurran@hotmail.com
ktzemployees@gmail.com

/s/ Lisa M. Meador
LISA M. MEADOR, Attorney No. 6270259
*One of the Attorneys for Defendant City of Chicago*